On Rehearing.
LAND, J.
The record in this ease consists of three voluminous transcripts filled with conflicting testimony, which it is impossible to reconcile. If the testimony of Mr. Ash be true, the plaintiffs were not the procuring cause of the Ash-Moberly agreement of sale, and had nothing whatever to do with the final sale to Ash. Defendant, however, admits in his answer that plaintiffs would have been entitled to a commission if the Ash-Moberly sale had been consummated. The pivotal question of fact is whether the agreement to pay commissions terminated on the failure of the Ash-Moberly deal, or continued in force down to the date of the final sale. There is testimony pro and con on this question, as is always the case when agreements of moment are not reduced to writing.
According to the testimony of Gheens and Ash, the plaintiffs had nothing to do with the negotiations after October 1, 1906. Mr.,Howell, of counsel for defendant, testified that ons October 1st he met the plaintiffs, and that they informed him that the Ash-Moberly deal was off, and urged him to see the defendant and persuade him to give them another' chance-to sell the property. It is true that the plaintiffs give a different version of the conversation, stating that it was a request for more time on the Ash-Moberly deal.
The testimony of Gheens, that the agreement to pay reduced commissions was conditioned on the Ash-Moberly deal going: through, is confirmed by Mr. Junk in one of his answers on cross-examination. The action of all the parties after October 1, 1906, confirms this conclusion. Plaintiffs were inactive, and Ash about October 10th began new negotiations on his own account, and finally induced a large sawmill concern to advance the necessary money to make a new deal.
Plaintiffs contributed nothing to this result. Ash was a mere promoter without means, and was not a prospective purchaser willing and able to buy.
In the Ash-Moberly agreement of August 7, 1900, Ash bound himself conditionally on Moberly’s purchase of the timber, and the-latter’s obligation to buy was secured by a deposit of $10,000 with the defendant, to be forfeited in case of Moberly’s failure to comply with his agreement to purchase.
It is obvious that this agreement could not be enforced against Ash, and that Moberly only risked his deposit.
Defendant exacted the forfeiture, and on November 2, 1906, offered to make plaintiffs a present of $10,000.
The judge below considered Ash as a purchaser procured by the plaintiffs, and' the-Ash-Moberly agreement as a sale which could be specifically enforced.
We excerpt from his charge the following passages:
“The demand and acceptance by the principal of any amount fixed as a forfeit in the contract *823 made by him with the purchaser is an admission by the party demanding and accepting the forfeit or any part of it that the contingency had happened upon which he had the right to enforce the contract.
“If you find that on August 7, 1906, the defendants or either of them made a valid contract or agreement to sell or buy the land which could have been specifically enforced with a purchaser secured by the plaintiff or their agent, then the plaintiffs are entitled to recover their commissions, having in the eyes of the law earned them.’’
These instructions were erroneous and misleading. The Ash-Moberly agreement was one to purchase the timber or to pay a stipulated penalty of $10,000. On his failure to comply with his agreement to purchase, the only claim that defendant could have enforced was the exaction of the stipulated penalty.
It is preposterous to contend that defendant is bound either in law or in equity to pay over $48,000 as commissions on a transaction involving only $10,000.
The verbal agreement to pay commissions on the sale of a part of the property was made in July or August, 1906, in view of the prospective purchase by Moberly. Plaintiffs’ contract was to sell or procure the sale of the whole property for $600,000. They had failed to do so, and defendant had the legal right to dispose of the property in whole or in part as it deemed best. The president of the defendant company was, however, disposed to do what was right, and agreed to prorate the commissions if the Ash-Moberly deal went through. According to Mr. Neal, this verbal agreement was made July 27, 1906, after he had been informed that Mr. Moberly was in the deal. This agreement was a concession, which the plaintiffs had no legal right to demand, and was made in view of a particular sale then in contemplation. It is hardly reasonable to suppose that this loose verbal agreement was intended as a continuing contract. Plaintiffs had no authority to sell a part of the property, and had no legal right to commissions on any such sale made by the owner. All the facts and circumstances of the case point to the conclusion that the agreement of July, 1906, was intended only to cover the Ash-Moberly deal.
The original contract was made with Junk and Neal, who took in Taylor and agreed to give him 50 per cent, of the commissions. Taylor found Ash, and agreed to divide commissions with him. Ash, therefore, was one of the four promoters, and was entitled to one-fourth of the commissions.
The whole theory of plaintiffs’ case rests on the untenable premise that they procured Ash as a prospective purchaser, and that defendant finally sold to Ash, thereby reaping the benefits of their services. The facts are that the final purchase was the independent work of Ash, after plaintiffs had utterly failed to find a purchaser.
It is therefore ordered that our former decree herein be reinstated as the judgment of the court.